[Civ. No. 1325.   Third Appellate District.—February 5, 1915.]

JOSEPH G. MANSFIELD, Respondent, v. JOHN S. CHAM-
BERS, as Controller of the State of California, Appel-
lant.

MOTOR VEHICLE DEPARTMENT—TRANSFER FROM OFFICE OF SECRETARY OF
STATE TO ENGINEERING DEPARTMENT — ABOLITION OF OFFICE OF
SUPERINTENDENT AND CASHIER.—The legislature, by the enactment
of the statute of 1913 (Stats. 1913, p. 639) relating to the "motor
vehicle department" intended to entirely disconnect that depart-
ment, as such department is defined or established by both the
statutes of 1905 and 1913, from the office of secretary of state,
and transfer it to the state department of engineering, and since
said enactment the secretary of state has been relieved of all re-
sponsibility and every duty in connection with the motor vehicle
department and said statute abolished the office theretofore existing
of superintendent and cashier of said department.

ID.—PUBLIC OFFICERS—POWER OF LEGISLATURE TO ABOLISH OFFICE.—
A public officer, at least one whose term and compensation are not
prescribed by the constitution, has no contract by which he can
have or hold either his office or his salary against the legislative
will; and it is within the legitimate power of the legislature to
abolish at any time any public office created by it, there being no
constitutional limitation upon the exercise of such power in the
particular case.

ID. — OFFICE OF SUPERINTENDENT AND CASHIER OF MOTOR VEHICLE
DEPARTMENT—POWER OF LEGISLATURE TO CONTROL.—The office of
superintendent and cashier of the motor vehicle department, as a
branch of the office of secretary of state, being wholly of legislative
creation, was subject to the control of the legislature and, there-
fore, to any regulation or disposition which that department of the
government elected to make concerning it; and the legislature had
the power to, and did abolish that office by the statute of 1913
(Stats. 1913, p. 639).

ID.—STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION.—Repeals by
implication are not, and never have been, favored, and the courts
will not so construe the effect of a subsequent statute upon a prior
legislative enactment where there is no express repeal of the prior
statute by the later one, unless the two are as to the vital matters
to which they relate irreconcilably inconsistent with or repugnant
to each other; but, e converso, where there is an irreconcilable
repugnancy between the provisions of the two, then, obviously, the
intention to repeal the prior statute is necessarily implied.

ID.—CONSTRUCTION OF ACTS OF 1905 AND 1913—CONFLICT BETWEEN—
REPEAL BY IMPLICATION.—There is an irreconcilable conflict between

the act of 1913 relating to and regulating motor vehicles, and the act of 1905 relating to the same subject, in so far as the latter statute established the motor vehicle department as a department of the office of secretary of state and vested in the incumbent of that office the authority and power to employ such clerical assistance to carry out the provisions of that act as he might find requisite; and the necessary effect of the act of 1913 was to abolish the office of superintendent and cashier of the motor vehicle department, that office having been created for no other purpose than to facilitate the execution of the provisions of the Motor Vehicle Act of 1905 by the secretary of state.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

John C. March, William E. Kleinsorge, and Charles A. Tuttle, for Respondent.

THE COURT.—This is a proceeding in *mandamus,* instituted by the plaintiff, to compel the defendant, as controller of the state of California, to draw and deliver to the said plaintiff a warrant on the state treasurer of the state of California for the sum of two hundred dollars for services alleged to have been performed by the plaintiff during the month of January, 1914, as superintendent and cashier of the motor vehicle department of the office of secretary of state.

The petition alleges that Frank C. Jordan, secretary of state of the state of California, under and by virtue of the power and authority conferred upon him by law, appointed the petitioner as superintendent and cashier of the motor vehicle department of the office of secretary of state, at an annual salary of two thousand four hundred dollars, payable in monthly installments of two hundred dollars out of the general fund of said state; that said appointment has never been revoked, and that plaintiff, during and for the entire month of January, 1914, performed the work of said office. It is averred that, upon the completion of the work as such superintendent and cashier, etc., for and during said month

of January, 1914, the plaintiff demanded of the defendant, as controller of the state of California, that he draw his warrant in favor of the plaintiff for the sum to which he became entitled by reason of the services performed by him as such superintendent and cashier for the said month of January, and that the defendant then refused and has ever since refused to draw a warrant in favor of the plaintiff for the sum of two hundred dollars in compensation for the services mentioned for the month referred to.

The court below overruled a general demurrer to the petition, and, the defendant refusing or failing to answer the petition, thereupon rendered and caused judgment to be entered that a writ of mandate issue· against the controller compelling him to draw his warrant in favor of the peti-tioner agreeably to the prayer of the petition.

This appeal is prosecuted by the defendant from said judgment.

The legislature of 1905 passed an act entitled ''An act to regulate the operation of motor vehicles on public highways, and making an appropriation for the purpose of carrying out the objects of this act.''  (Stats. 1905, p. 816, et seq.)  By said act, a somewhat elaborate system of regulating the use and the manner of using motor vehicles in this state was established and the duties appertaining thereto were annexed to and made a part of those of the office of secretary of state. It is not essential to the decision of the question submitted by this appeal to present here a detailed review of the pro visions of said act.  It is enough to say that the duties imposed upon the secretary of state by said act were such, in the legislative judgment, as to necessitate the employment of clerical assistance in that office in addition to that which was required before the act in question added the motor vehicle department thereto.  The legislature made provision for such additional assistance by section 8 of the act, whereby an appropriation of twenty thousand dollars was made ''for the purpose of carrying out the objects of this act, to be used by the secretary of state in the employment of the necessary clerk or clerks,'' etc.

In the year 1909 the legislature so amended section 415 of the Political Code as that the secretary of state was authorized to appoint and employ, among other additional clerks allowed said officer by said section, a "superintendent and

cashier of the motor vehicle department" of said office of secretary of state, and the salary for such superintendent, etc., was fixed at two thousand four hundred dollars per year, payable to the incumbent thereof in equal monthly payments. (Stats. 1909, p. 369.)

In 1911 the legislature of that year passed an act amending and repealing a number of the sections of the Political Code relating to the office of secretary of state and the duties thereof. (Stats. 1911, p. 573 et seq.) By that act section 412 of said code was made to read, in part: "The secretary of state, to assist him in the discharge of the duties of his office, may appoint the following officers: . . . one superintendent and cashier of the motor vehicle department." By the same act section 413 of said code was practically substituted for section 420 thereof, and, in the place of the latter section, fixes the salaries of the various clerks and officers employed in his office by the secretary of state, including the superintendent and cashier of the motor vehicle department, whose salary is thereby fixed at two thousand four hundred dollars per annum.

The legislature of 1913 passed an act whereby the act of 1905 regulating motor vehicles was revised and amended in many particulars and whereby, furthermore, the motor vehicle department was transferred from the jurisdiction and control of the office of secretary of state and annexed to and made a part of the state department of engineering. (Stats. 1913, p. 639 et seq.) That act, which was approved on the thirty-first day of May, 1913, and which, by virtue of a provision contained therein, went into effect on the thirty-first day of December, 1913, does not expressly repeal the provision of section 415 of the Political Code, or said section as amended by the legislature of 1911, creating the position of superintendent and cashier of the motor vehicle department as one of the clerical adjuncts of the office of secretary of state.

The legislature of 1913 passed the customary general appropriation bill, providing for the support of the state government, and which was made a law on June 10, 1913, and in thus providing for the salaries of the secretary of state and subordinates in that office (all enumerated in said act) made no provision for a salary for a "superintendent and

cashier of the motor vehicle department." (Stats. 1913, p. 1334.)

Obviously, the legislature, by the enactment of the statute of 1913, *supra*, intended to entirely disconnect the "motor vehicle department," as such department is defined or established by both the statutes of 1905 and 1913, from the office of secretary of state, and it is equally obvious that the effect of the latter act was to do so. The result is, quite clearly, that, since the date upon which the statute of 1913 became effective, all the duties pertaining to said department have not been among those with the performance of which that officer is charged by law. In other words, the transference of the motor vehicle department from the control of the secretary of state to that of the state department of engineering removed from the secretary of state all responsibility and every duty in connection with the motor vehicle department which prior to the enactment of the said statute of 1913 it was incumbent upon him to discharge by virtue of the act of 1905, *supra*. But, as stated, the statute of 1913 does not, by express language, repeal that part of section 415 (or 412) of the Political Code providing for a superintendent and cashier of the motor vehicle department, and the petitioner vigorously contends that there exists no such repugnancy between the provisions of said statute and those of the act of 1905 as necessarily implies an intention in the legislature to abolish said office by the former statute. Upon these propositions the petitioner undertakes to maintain that the office of superintendent and cashier of the motor vehicle department still exists, and that, being the incumbent thereof, his appointment thereto never having been revoked, he is entitled to the salary annexed to said office.

On the other hand, the defendant contends, and upon that proposition he grounds his refusal to draw his warrant in favor of the petitioner as prayed for in the petition, that the act of 1913, transferring the control of the motor vehicle department from the office of secretary of state to the state department of engineering, and authorizing the department of engineering to employ the necessary clerical help to carry out the provisions of said act, necessarily operated to repeal the provisions of the act of 1905, which authorized and empowered the secretary of state to employ such clerical help, including the superintendent and cashier of the motor

vehicle department, as he might find necessary to perform the identical service now required of the department of engineering by the act of 1913 vesting in said department full and exclusive control of and over the motor vehicle department.

It will not be disputed that "a public officer, at least one whose term and compensation are not prescribed by the constitution, has no contract by which he can have or hold either his office or his salary against the legislative will." (*Pennie* v. *Reis,* 80 Cal. 266, 269, [22 Pac. 176].) Or, as is said in *Miller* v. *Kister,* 68 Cal. 144, [8 Pac. 814]: "Salaried public offices created by the legislature are not held by contract or grant. The legislature has full control over them, unless restricted by the constitution, and may abolish them altogether, or impose upon them new duties, or reduce their salaries."

Under the well-settled rule as thus stated, it will not for an instant be questioned that it lies within the legitimate power of the legislature to abolish at any time any public office created by it, there being no constitutional limitation upon the exercise of such power in the particular case by the legislature.

The case of *Marquis* v. *City of Santa Ana,* 103 Cal. 661, [37 Pac. 650], cited by the petitioner, is not opposed to the views thus expressed. The decision in that case merely amounts to this: That a municipal office created by the legislature cannot directly or indirectly be abolished by a municipal corporation organized as such under the Municipal Corporation Act, which is a general law of the state. Readily it will be observed that there is no analogy between that case and the one at bar. No one will undertake to support the proposition that a municipal corporation can, by ordinance or otherwise, either directly or indirectly, abolish a public office created by an act of the legislature, which was, in effect, what the city of Santa Ana, as a municipal corporation, attempted to do in the case cited. Indeed, it is only the statement of a common-place proposition to say that the legislative body of a municipal corporation cannot repeal any act or statute passed by the legislature of the state. But we think no one will question the proposition that, had the office of city assessor of Santa Ana been solely the creature of an ordinance passed by the governing body of that city in the

exercise of corporate powers conferred upon it by the Municipal Corporation Act, which placed no restriction upon the corporation in that respect, such governing body could at any time abolish said office by ordinance, thus exercising the identical power within the sphere of its corporate jurisdiction that rests in the legislature with respect to offices created by it and as to the right to abolish which at any time no restriction or qualification is imposed by the constitution.

In the case at bar, the office of superintendent and cashier of the motor vehicle department, as a branch of the office of secretary of state, being wholly of legislative creation, was subject to the control of the legislature and, therefore, to any regulation or disposition which that department of the government might elect to make concerning it. And, as seen, the question which is presented here is whether the legislature, in the exercise of its well-defined power to do so, has abolished said office, or, in other words, whether the effect of the enactment of the statute of 1913, *supra,* was to abolish said office of "superintendent and cashier of the motor vehicle department" of the office of secretary of state.

The courts are, with singular and obvious propriety, reluctant to declare that a legislative enactment has been repealed by implication. In other words, repeals by implication are not and have never been favored, and the courts will not so construe the effect of a subsequent statute upon a prior legislative enactment, where there is no express repeal of the prior statute by the later one, unless the two are, as to the vital matters to which they relate, irreconcilably inconsistent with or repugnant to each other. But, *e converso* where there is an irreconcilable repugnancy between the provisions of the two, then, obviously, an intention to repeal the prior statute is necessarily implied.

It is as clear as any proposition can be that there exists an irreconcilable conflict between the law of 1913 relating to and regulating motor vehicles, and the law of 1905 relating to the same subject, in so far as the latter statute established the motor vehicle department as a department of the office of secretary of state and vested in the incumbent of that office the authority and power to employ such clerical assistance to carry out the provisions of that act as he might find requisite. It is, therefore, plainly manifest that the necessary effect of the act of 1913 was to abolish the office of

superintendent and cashier of the motor vehicle department, said office, it being virtually conceded, having been created for no other purpose than to facilitate the execution of the provisions of the Motor Vehicle Act of 1905 by the secretary of state. And it is a fact of more than ordinary significance, in connection with the consideration of what was the legislative intent with respect to the office involved in this controversy, that the legislature of 1913, as has been shown, made no special provision in the general appropriation act, as thus it had previously done since the creation of that office, for the payment of the salary of such officer. This fact undoubtedly supports the view that the intention was to abolish the office, for, most assuredly, it must be assumed, had the legislature not so intended it would have specially provided, as it did for the deputy and other clerical help in the office of secretary of state, for the compensation of the incumbent of that office.

At any rate, we are unable to persuade ourselves, after a careful examination and comparison of the provisions of the two acts, and a consideration of the fact that it was the evident design of the legislature to vest in the state department of engineering entire and exclusive control and administration of the duties of the motor vehicle department, that the legislature did not intend to repeal so much of section 415 or 412 of the Political Code as purports to create the office of superintendent and cashier of the motor vehicle department, or that the necessary effect of the statute of 1913 relating to and regulating motor vehicles was not to do so.

The judgment is reversed and the cause remanded, with directions to the court below to sustain the demurrer to the petition.