[Civ. No. 11353. Third Dist. Apr. 25, 1967.]

ROY R. SANTIN et al., Plaintiffs and Appellants, v. ALAN CRANSTON, as State Controller, etc., Defendant and Respondent.

Wilmer W. Morse for Plaintiffs and Appellants.

Lawrence R. Gercovich and James R. Cutright for Defendant and Respondent.

PIERCE, P. J.—Two California National Guard officers (petitioners) retired after 20 years of military service, claimed monthly retirement benefits to be described, were allowed benefits in a lesser amount by respondent Controller, referred their claims to the Board of Control. That board sustained their larger claims but the Controller remained adamant. This proceeding for a writ of mandate in the superior court to compel the Controller to accede resulted in a judgment for the latter. Petitioners appeal.

The controversy involves the applicability of 1961 amendments to Military and Veterans Code sections 228 and 215. Both became operative October 1, 1961, revising a retirement system originating in 1953 and unchanged since then until the 1961 amendment. Because the retirement dates of petitioners were November 30, 1962 (for Santin) and December 31, 1962 (for Galletly) all but a little more than a year of this military service was before the amendment. The effect of the amendment, if applicable, would exclude inactive service in the United States armed forces. Former law counted both active and inactive service.

The questions susceptible to dual statement are: should the Legislature be deemed to have intended the amendment to apply to military personnel in petitioners' position? Could it do so constitutionally?

Since we will decide petitioners' pension rights had already vested when the law was amended, and since in construing legislative enactments courts will presume the Legislature intended a constitutional application and an unconstitutional construction will not be given unless the wording of the statute compels it (*Baldwin* v. *City of San Diego* (1961) 195 Cal.App.2d 236, 240 [15 Cal.Rptr. 576]), we give negative answers to both questions.[1]

---

[1]This is not to say that a *clear wording of the statute compelling us to*

We state the facts in more detail. On November 30, 1962, the date of his retirement, Roy Santin was a colonel in the California National Guard on active duty with the office of the Adjutant General. He had served approximately 22 years on active military duty, nearly 15 of the years as above, and, in addition, he had served over 5 years in active service and nearly 2 years in an inactive status in a reserve component of the United States Army. Petitioner Galletly, who, as stated, retired on December 31, 1962, was a chief warrant officer, in similar service. He had served over 23 years on active duty, 15 of them in the California National Guard with the office of the Adjutant General, and, in addition, had served more than 5 years on active duty and more than 3 years in an inactive status in a reserve component of the United States Army.

One month after retirement each officer submitted his verified claim for the first month's retirement pay. These claims were computed on the basis of the laws to be discussed as they existed before October 1, 1961, with the fate described above.

Military and Veterans Code section 228, until October 1, 1961, provided that any commissioned or warrant officer with 20 years of military service for the state might apply for retirement. The section provided that service in the armed forces of the United States or any reserve component thereof should be considered as state service in computing the length of service. It further provided they would be retired "in accordance with the federal law, statutes, rules and regulations which on the date of such application govern the retirement of commissioned officers and warrant officers of the reserve components of the Army of the United States on extended active duty. In such cases the length of service shall be computed as provided in this section and Section 215 of this code." (Stats. 1953, ch. 193, § 4, p. 1208.)

Section 215 of said code then provided that military personnel of the National Guard with service in the armed forces of the United States or any reserve component thereof shall be entitled to credit for time so served as if such service had been rendered in the state forces.[2]

_interpret the Legislature as having intended in 1953 a nonvesting pension to military personnel would have been unconstitutional. Here we demonstrate no such wording exists. As to whether a nonvesting pension system could be enacted, we express no opinion._

[2]Other sections of the California Military and Veterans Code are pertinent to this inquiry. Section 100 expresses the intent of the Legislature to conform to "acts and regulations of the United States" relating to

In both sections 228 and 215, so far as concerns federal service which counted towards retirement, no distinction was made between active and inactive service.

Under the federal law referred to in said section 228 retirement pay is covered by 10 United States Code Annotated sections 3991, 1405, and 37 United States Code Annotated section 233, the formula of retirement pay being 2½ percent multiplied by base pay multiplied by years of *both active and inactive service.* Thus, under the federal formula and California statutes then in effect, Santin would be entitled to $500.50 per month and Galletly to $292.20 per month. There has been no change in the federal statutes.

The 1961 amendment to section 215 provides: ''Federal law notwithstanding, in computing state service for retirement with pay under this authority, only full-time *active* service with the armed forces of the United States or any reserve component thereof shall be considered.'' (Italics supplied.) (Stats. 1961, ch. 2174, § 3, p. 4497.) Section 228 contains a correlating amendment. Should these amendments apply retrospectively to these officers, Santin would receive $430 per month, a reduction of $70.50; Galletly would receive $235 per month, a reduction of $57.20.

Early California cases—not cited herein since they are primarily of historical interest (see Ann. 52 A.L.R.2d 445, note 7, where they *are* cited)—held there was no vested right in a public employee to receive a pension which barred repeal of a pension law (as applied to nonretired employees).

It is now well settled in California that there *is* a limited vested right when an employee goes to work for a public entity which has a retirement (pension) system, that the integrity of the system then in effect or as thereafter enacted to include employees of the benefited class then working will be maintained. It becomes an integral and indispensible part of the employment contract between the entity and the employee—a part of the consideration for his continued work. The right vests before the happening of the contingency that makes the pension payable and cannot constitutionally (see

the same subject matter and section 101 contains similar language ''relating to the control, administration and government of the Army . . . and . . . Air Force'' of the United States. The above is qualified by the statement: ''so far as the same are not inconsistent with the rights reserved to this State and guaranteed under the Constitution of this State. . . .'' Section 320 states that pay and allowance of officers and warrant officers of the National Guard on active duty are to be the same as those in similar grade in the army.

442

Cal. Const., art. I, § 16³) be abolished or impaired (as to employees then employed) by repeal or changes in the law. Flexibility, however, is permitted. Changes may be made affecting such employees (prior to retirement) but substitute provisions must confer comparable benefits, i.e., modifications which result in disadvantages must add commensurate advantages bearing a reasonable relation to the benefits lost. (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 449 [326 P.2d 484]; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765]; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 855 [179 P.2d 799]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511 [332 P.2d 324]; and see footnote 4, *infra.*)

Respondent does not challenge these rules. His contention is they do not apply because: (1) The California statutes reviewed above make federal laws, rules and regulations governing the pay and pensions of members of the armed forces of the United States also applicable to the pay and pensions of California National Guardsmen, (2) federal case law declares that pensions of military personnel are nonvested, and (3) the Military and Veterans Code provisions of 1953 construed as respondent asks us to construe them would be constitutional; therefore, the pensions here are nonvested.

As we have already noted, the first premise of respondent's syllogism is accurate. (See Mil. & Vet. Code, §§ 228, 100 and 101.) The second premise is also correct. Respondent cites *Lynch* v. *United States,* 292 U.S. 571 [78 L.Ed. 1434, 54 S.Ct. 840], and *Anderson* v. *United States,* 205 F.2d 326 [40 A.L.R.2d 639], both of which cases contain dictum that pensions are gratuities which may be withdrawn at any time at the discretion of Congress. An annotation in 52 American Law Reports 2d 437 (at pp. 443-444) also places federal courts among those of several jurisdictions said to follow the "nonvested" rule.⁴ As to premise (3)—that the state *could expressly* enact a nonvesting pension plan *as applied to beneficiaries thereafter employed*—we could assume but do not have to decide. Dictum in *Glaeser* v. *City of Berkeley,* 148

---

³A corresponding provision of the United States Constitution is article I, section 10, subdivision 1.

⁴In this connection, however, the same annotation (idem., pp. 444-445) states: "In no jurisdiction is there more authority on the point under annotation than there is in the decisions of the California courts. The rule presently applicable in that state (and reflecting many years of judicial development of the vested rights theory of public employees' pensions) is that a public employee, upon rendering service under a pension statute, secures limited pension rights."

Cal.App.2d 614, at page 618 [307 P.2d 61], so states *with reference to a reserved power to modify.* Whether that should be or is the rule and whether it applies to *a reserved right of repeal* is not a question here involved. The Legislature did not expressly or by inference in the 1953 version of the act create a nonvested right.

Respondent's conclusion from his premises is a non sequitur. ■ The sections of the California Military and Veterans Code referred to above do not either expressly, inferentially or by implication incorporate the federal case law *interpreting the effect and* status of a pension. California case law applies to such interpretation. The federal law, rules and regulations referred to by our code are incorporated for a single purpose only: As stated by appellant, they are a device to measure pay during service and the allowances to be paid after retirement. (It is worth repeating that so far as the amounts paid by the United States to commissioned and warrant officers during their active service and upon their retirement they have not been changed by federal law, statute, rule or regulation during the period from 1953 to date. It is also to be noted that no double credits are involved. During the period when petitioners were on an inactive status with the United States Army reserve component they were not receiving army credits for active service with the state.) The code does not refer to case law interpretations which vary in various respects in different jurisdictions, including the federal courts. ■ There is no more reason why the pension rights of military personnel should be nonvested under California law than the pension rights of any other public employees. The California retirement system for employees in the military service was adopted by the Legislature with a background of long-established case-law rulings in this state that ALL pension rights are vested (to the limited extent stated). Had the Legislature intended to provide otherwise in the Military and Veterans Code, it would have been a simple matter to have said so. Since the Legislature has *not* so provided we will not judicially legislate. This is a well-established principle of statutory interpretation.

It is argued that because the retirement system for California military personnel is "noncontributing" and such systems in some jurisdictions (but not California) have been held to be nonvested (see 52 A.L.R.2d 437, at p. 441) the Legislature should be construed so to have intended here. We do not subscribe to that reasoning. The "California rule" is

based upon the theory of the existence of a contract. Some contracts contain terms more advantageous than others. Some contracts of employment contain both better compensation and so-called "fringe" benefits than others. They are contracts nonetheless.

Item 170, 1962 Budget Act, Statutes 1962, Second Extraordinary Session, chapter 1, provides: "170—For payment of military retirements in accordance with the provisions of Section 228 and 256, Military and Veterans Code, Military Departments—26,220."

We assume funds are available from this appropriation to pay the amounts prayed for by this petition for writ of mandate.

Appellants are entitled to the amounts payable under the code sections prior to the 1961 amendment and which have been withheld. The sums are payable with both prejudgment and postjudgment interest. (*Mass* v. *Board of Education,* 61 Cal.2d 612, 625-626 [39 Cal.Rptr. 739, 394 P.2d 579].)

CONCLUSION

"[P]ensions for public employees are based upon the theory that such a pension is an integral part of the employee's compensation under his contract of employment, and that one of the primary purposes of offering a pension, as additional compensation, is to induce competent persons to enter and remain in public service. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 851-853, 855, 856 [179 P.2d 799]; *French* v. *French,* 17 Cal.2d 775, 777 [112 P.2d 235, 134 A.L.R. 366]; *Dryden* v. *Board of Pension Comrs.,* 6 Cal.2d 575, 579 [59 P.2d 104].)" (*Packer* v. *Board of Retirement,* 35 Cal.2d 212, 215 [217 P.2d 660].)

There is no right to tenure in the absence of a special provision, and a "lawful termination of employment before completion of the period of service designated in the pension plan" will cut off the right. But a pension right is still protected by the contract clause of the Constitution and is "'an integral portion of contemplated compensation.'" (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d 848, 853.)

The judgment is reversed. Let the writ issue as prayed for and in accordance with the views expressed herein.

Friedman, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.